IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Neil Wolfe,                                    :

              Plaintiff                        :     Case No. 2:13-cv-0553

         v.                                    :

Carolyn Colvin,                                :     Magistrate Judge Abel
Acting Commissioner of Social Security,
                                               :
              Defendant                        :

                                               :

**DECISION**

Plaintiff Neil Wolfe brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security denying his application for supplemental security income benefits.  This matter is before the Court on the administrative record and the parties' merits briefs.

**<u>Summary of Issues</u>.**  Neil Wolfe filed an application for supplemental security income benefits on October 7, 2009 alleging that he became disabled in August 2004, at age 27, by diabetes, high blood pressure and bleeding ulcers. The administrative law judge found that Wolfe retained the ability to perform a reduced range of work having light exertional demands.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to give appropriate weight to the opinion of Dr. Emily Johnson, Wolfe's treating physician.
- There is not substantial evidence supporting the administrative law judge's

determination that Wolfe has the residual functional capacity for light work.

**Procedural History.**  Plaintiff Neil Wolfe filed his application for supplemental security income benefits in October 2009, alleging that he became disabled on August 26, 2004, at age 27, by diabetes, high blood pressure and bleeding ulcers.  (Tr. 127-29 and 147.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On October 25, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (Tr. 35-74.)  A vocational expert also testified.  On November 14, 2011, the administrative law judge issued a decision finding that Neil Wolfe was not disabled within the meaning of the Act.  (Tr. 17-29.)  On April 10, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (Tr. 1-3.)

**Age, Education, and Work Experience.**  Neil Wolfe was born September 7, 1976. (Tr. 124.)  He has a high school education. (Tr. 152.) Although Wolfe testified he was in learning disabled classes from the fifth or sixth grade on (R. 45), an unsigned disability report form states he was never in special education classes. (R. 153.) He has worked as a cook, general laborer, pizza deliverer, gas station attendant, and tire store mechanic. He last worked, changing tires, in August 2004.  (Tr. 148.) That work was classified as heavy in exertion and was semi-skilled (Tr. 67, 148, 158, 181, 193, 210.) Wolfe testified he left that job when his back was giving him trouble getting up and down, and his em-

2

ployer did not need him anymore. (R. 47.) He did not apply for unemployment benefits. (R. 48.)

**Plaintiff's Testimony.** Wolfe gave the following testimony at the October 2011 hearing before the administrative law judge. He is 5' 4" tall, and his weight fluctuates between the 230's and the 240's. (Tr. 42 and 60.) Wolfe is able to drive, although his significant other does most of the driving. (Tr. 43.) He can read simple sentences and perform basic math. (Tr. 46.)

Wolfe's diabetes has caused him to have shakiness at times and other times he has had difficulty getting out of bed. (Tr. 48.) At times his vision was blurry. (Tr. 49.) His blood sugar level would typically run in the 350-450 range, even up to 500, but very seldom in the 200's. (Tr. 50.) Wolfe said that for the last eight to nine months he could afford his medications and now took them on a fairly regular basis. He was on a diabetic diet and was watching what he ate. (Tr. 61-62 .) He had dizzy spells two or three times a week that lasted a couple of minutes. (Tr. 62.)

Related to his diabetes, Wolfe described problems with his eye sight. (Tr. 54.) He said that the problem was not diabetic retinopathy. However, even though he wore glasses, a couple of times a week his vision would become blurry. (Tr. 55-56.) When his blood sugars were elevated he felt weak, and he had head pain and dizziness. (Tr. 61-62.) He was wearing a brace on his left knee, but even so it sometimes "kicks backward" and he falls. (Tr. 58.)

Wolfe further testified that he has pain in both knees, with the pain in the left

3

worse than the right. Although he had an x-ray of the left knee, his doctor also wanted an MRI. (Tr. 52.)

Wolfe testified that he could stand/walk two hours out of an eight-hour day. (Tr. 63.) He could sit two to two and half hours out of an eight hour day in an office chair. (Tr. 64.) Two to three times a month he's worn out so bad that he can't get out of bed. (Tr. 64.)

The vocational expert testified that if someone would miss work at least two times a month that competitive employment would be eliminated. (Tr. 69-70.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  Nonetheless, this Decision will summarize that evidence in some detail.

**Physical Impairments.**

In a March 13, 2007 telephone report to a social security field office employee, plaintiff Wolfe said that his symptoms from his diabetes varied depending on whether he was on his medications or not. He also reported that he was "able to walk, bend over and climb stairs without assistance," and that he could do household chores. (Tr. 155.)

E.R. visits. On January 3, 2007, Wolfe went to the emergency room with complaints of increased blood sugar, thirst, a headache for three days, and increased urination. (Tr. 217.) His blood glucose was 283 mg/dl and his hemoglobin A 1 C was 7.2. (Tr. 220-221, 223, 240.)

On January 21, 2009, Wolfe went to the emergency room with complaints of vomiting for 2-3 days and "pressure-like sensation" in the left upper quadrant region. (Tr. 247.) Examination revealed tenderness to palpation in the left upper quadrant. (Tr. 247.) The diagnoses were vomiting and viral syndrome. (Tr. 248.)

Ohio Valley Family Physicians. On January 25, 2007, Wolfe was seen at Ohio Valley Family Physicians. He reported that although his diabetes had improved, he had a change in vision, polydipsia and polyuria. (Tr. 236.) In addition, he experienced excessive thirst and excessive urination. He had normal activity and energy levels (Tr. 236.) The assessments were diabetes mellitus and benign essential hypertension. (Tr. 237.)

Lab work. On May 15, 2008, lab work revealed an elevated glucose at 179 mg/dl and a hemoglobin A 1 C of 8.6. (Tr. 265.) Lab work from December 18, 2008 revealed elevated glucose at 321 mg/dl and a hemoglobin A 1 c of 11.3. (Tr. 256.)

On May 8, 2009, lab work revealed a glucose level of 157 mgldl. (Tr. 251.) Blood work showed a glucose level of 154 mg/dl and a hemoglobin A 1 C of 7. 7 (Tr. 243.)

On March 1, 2011, Wolfe's hemoglobin A1C was 10.7 and his blood glucose 307 mg/dl. (Tr. 415-166.) On October 4, 2011, Wolfe's glucose level was 286 mg/dl, and his hemoglobin A1c was 10.2. (Tr. 380.)

FCMH Medical and Surgical Associates. Wolfe was seen by FCMH Medical and Surgical Associates from December 18, 2008 through April 16, 2010. (Tr. 272-91, 294-327 and 341-50.) His principal treator was Dr. Emily Johnson, a family physician. (Tr. 160,

5

203, 297-99, and 358.) Initially, Wolfe reported that his blood sugar readings had ranged from 150 to 200, but they were now above 200. His only prescribe medication was Metformin. (Tr. 287.) His symptoms included blurred vision, headaches, polydipsia, polyuria, changes in his vision, and an increased frequency of urination. (Tr. 287-88.) The assessment was rhinitis hyper-lipidemia, hypertension, and diabetes type II adult onset. (Tr. 289-90.)

In follow-up visits, Wolfe continued to have difficulty controlling his blood sugars reporting that the levels ranged from 200 to 500. (Tr. 272, 279, 284, and 317.) His reported symptoms included blurred vision/changed vision, polyuria, and polydipsia (Tr. 272, 279-80, 283-4, and 343); headaches (Tr. 279), mild chest discomfort (Tr. 275, 280 and 285), bloating (Tr. 281, 285), frequency of urination (Tr. 285), shortness of breath (Tr. 275), rhinitis (Tr. 275), nasal stuffiness (Tr. 273), fatigue (Tr. 273, 276), and foot pain on the plantar surface. (Tr. 275.) His weight fluctuated between 228 and 240 pounds. (Tr. 273, 276, 281,285, 316, and 344.) Diagnoses were diabetes mellitus (Tr. 274, 277, 281, 285, 317, and 345); rhinitis (Tr. 277); plantarfasciitis (Tr. 277); chest pain (Tr. 274,277, 346); hyperlipidemia (Tr. 282); hypertension (Tr. 274, 282, 317, 346); and gastroesophageal reflux disease. (Tr. 282 and 317.) Insulin was prescribed beginning January 5, 2009. (Tr. 286.)

Compliance with medications and diet was an issue. (Tr. 295.) On October 6, 2009, Wolfe was counseled about the importance of compliance and the benefits of exercise. (Tr. 314.) On November 13, 2009, he reported that his blood sugars were in the

200's, he had stopped taking his Metformin, and he had not been following his diet until that month. The importance of compliance was again stressed. (Tr. 317.) In April 2010, the doctor reported plaintiff had not followed up on getting labs drawn and did not have regular appointments. (Tr. 342.) He has not using his insulin as directed and was poorly compliant with diet. (Tr. 345.) In July 2010, Wolfe still had not spoken with a financial counselor as he had been instructed to do so that he could work out a reduced payment for tests he needed. (Tr. 377.) Dr. Johnson's September 22, 2011 office notes state that Wolfe had "a history of being poorly compliant with diet, followup and medications. He has shown increased dedication to improve his diabetic control." (Tr. 359.)

Wolfe maintained logs of blood glucose levels beginning in March 2011. (Tr. 388-93.) Most of the recorded readings were in the 200's-300's range, with very few in the 100's. The highest reading was 460, and the lowest 89. (Tr. 388.)

Dr. Emily Johnson diagnosed uncontrolled, uncomplicated diabetes mellitus, type II. (Tr. 358.) Wolfe reported symptoms of fatigue (Tr. 359, 362, 365, and 368), change in vision (Tr. 359 and 368), polydipsia (Tr. 365, 368), and polyuria (Tr. 365.) He reported experiencing hypoglycemia symptoms of sweating and shaking once one to three times a month.(Tr. 359, 362 and 365.)

Wolfe also complained of pain and swelling in his left knee that was exacerbated by kneeling and squatting. (Tr. 359, 362, and 365) and right knee pain. (Tr. 359.) Wolfe wore a brace on the left knee. (Tr. 359.) On September 22, 2011, he had a normal range of motion. There was no instability, subluxation or laxity. There was no creptius. No

fractures or deformities were observed. (Tr. 360.) Symptoms included pain and swelling. There was no warmth, redness, locking or instability. The onset was sudden, five months ago. (Tr. 359.) An October 4, 2011, an x-ray of the left knee was normal. An x-ray revealed "no bone, joint, or soft tissue abnormality." (Tr. 379.)

Dr. Johnson also diagnosed plantar fascial fibromatosis, for which she prescribed stretching exercises . (Tr. 359 and 362.) Additional complaints include chest pain with associated dizziness, fatigue and sweating. (Tr. 359, 362, 366, and 368.)

Wolfe's weight ranged between 227 pounds and 236 pounds. (Tr. 360, 363, 366 and 369.) Dr. Johnson's assessments included diabetes (Tr. 361,364,367, 370), knee pain (Tr. 361,364, 367), anxiety (Tr. 364, 370), hypertension (Tr. 370), hyperlipidemia (Tr. 370), and chest pain. (Tr. 370.)

On April 16, 2010, Dr. Johnson completed a questionnaire about plaintiff's health. She diagnosed chest pain; diabetes mellitus, Type II, uncontrolled; GERD (gastro-esophageal reflux disease), hyerlipidemia; hypertension; petptic ulcer history; and plantar fascitis. (R. 341.) She noted that he "has been noncompliant with following up for labs," "poor in his follow up" with medications, "does not get labs drawn", and "does not follow up in office regularly'.' (Tr. 341-342.) Dr. Johnson wrote that she did not perform functional capacity assessments. (Tr. 342.) She included her treatment notes from that day. (Tr. 343-348.) Plaintiff's diabetes was uncontrolled, he had recent vision changes, and he had stopped all of his medication. He  reported "having problems affording meds". (Tr. 343.) He was not following treatment advice that he maintain a

8

diabetic diet. He skipped some meals and had high fat, high carbohydrate meals when he did eat. (Tr. 343, 345.) Additional dietary counseling was given. (Tr. 345.) It was also noted that Wolfe was "not using his insulin as directed." (Tr. 345.) He had a normal gait and no significant musculoskeletal abnormalities. (Tr. 343-346.) He was "poorly com-pliant with diet, follow up, and medication", and he had "no recent labs".  He was not using his insulin as directed. (Tr. 345.)

On March 29, 2011, Dr. Johnson completed a Basic Medical form. (Tr. 399-401.) She diagnosed anxiety; diabetes mellitus, Type II, uncontrolled; history of peptic ulcer disease; hyperlipidemia; hypertension; knee pain; chest pain; esophageal reflux disease; and chronic rhinitis. Wolfe's health status was stated to be poor but stable.  (Tr. 399.) Dr. Johnson stated that she does not perform function capacity assessments, but on the part of the form asking whether her patient was employable or unemployable, she circled employable and wrote in "at least a part-time". (Tr. 400.)

Grey Eckert, D.O., Optique Family Vision. On November 30, 2009, Dr. Eckert, an optometrist,  reported that Wolfe had myopia and bilateral astigmatism.  (Tr. 330.) An examination showed that, when he wore his glasses, Woplfe had 20/20 vision in both eyes for both distance and reading. (Tr. 328.) Dr. Eckert recommended that he wear glasses all the time for best vision correction. Wolfe needed annual exams to monitor changes in vision and check for retinopathy. (Tr. 330.)

On November 8, 2011, Wolfe was seen for an eye exam. He complained of frontal headaches lasting for weeks. (Tr. 354 .) Reading made the headaches worse; and

9

they worsened during the day (Tr. 354 .) The headaches occurred weekly. (Tr. 354 .) In addition, Mr. Wolfe complained of blurred near and distant. His vision fluctuated. (Tr. 354.) The diagnoses were myopia and astigmatism. (Tr. 354 .)

Dr. Myung Cho, M.D. In February 2010, Dr. Cho, a state agency reviewing physician, reviewed plaintiffs medical records for a disability evaluation. (Tr. 333-40.) The primary diagnoses were diabetes mellitus and hypertension with secondary diagnoses of GERD and plantar fasciitis. (Tr. 333.) In Dr. Cho's opinion, plaintiff could lift, carry, push and pull 25 pounds frequently and 50 pounds occasionally; stand and/or walk about six hours in an eight hour workday; and sit about six hours in an eight hour workday. (Tr. 334.) This residual functional capacity assessment was consistent with medium exertional work. 20 C.F.R. § 416.967(c.) Dr. Cho also opined that plaintiff could never climb ladders/ropes/scaffolds and should not work around unprotected heights or hazards such as moving machinery. (Tr. 335 and 337.)

In making the evaluation, Dr. Cho noted that plaintiff's diabetes was uncontrolled and that he was not "following a special diet or exercising despite recommendations. He was noncompliant with medication." (Tr. 334.) A May 2008 cardiac stress test was negative. Dr. Cho further observed that in July 2008 Wolfe had been given stretches and recommended supportive shoes for foot pain. In November 2009, plaintiff stopped his medications of his own accord due to side effects. His gastroesophageal reflux disease (heartburn) had worsened due to his poor diet. Nonetheless, upon examination plaintiff had a normal gait, with no chest pain, shortness of breath, edema, or inflam-

10

mation. (Tr. 335.)

In May 2010, state agency reviewing physician Gerald Klyop, M.D., reviewed the evidence and affirmed Dr. Cho's assessment. Dr. Klyop observed that plaintiff did not allege any worsening of his physical impairments or any new ones. Dr. Klyop also noted that during an April 2010 examination plaintiff had normal gait, clear lungs, normal heart, and equal and reactive pupils with no major visual changes. (Tr. 351 .)

**Administrative Law Judge's Findings.** The administrative law judge made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since October 7, 2009, the application date (20 CFR 416.971 et seq.).
> 2. The claimant has the following severe impairments: obesity, diabetes, and left knee pain (20 CFR 416.920(c)).
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; can frequently push, pull, and operate foot pedals with his left lower extremity; and must avoid exposure to -hazards such as dangerous moving machinery and unprotected heights.
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
> 6. The claimant was born on September 7, 1976 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
> 7. The claimant has a marginal education and is able to communicate in English (20 CFR 416.964).
> 8. The transferability of job skills is not material to the determination of

11

disability because using the Medical-Vocational Rules as a framework
supports a finding that the claimant is "not disabled," whether or not the
claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404,
Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and resid-
ual functional capacity, there are jobs that exist in significant numbers in
the national economy that the claimant can perform (20 CFR 416.969 and
416.969(a)).

10. The claimant has not been under a disability, as defined in the Social
Security Act, since October 7, 2009, the date the application was filed (20
CFR 416.920(g)).

(Tr. 19, 22, 27, 28, 29). Based on the residual functional capacity to perform a reduced

number of jobs with light exertional demands, the administrative law judge found that

plaintiff was unable to perform his past work, but that a person of his age, education,

and work experience could perform a significant number of jobs, including plastic hos-

pital product assembler (1,750 jobs statewide) and injection mold machine off-bearer

(1,800 jobs statewide). (Tr. 27-29).

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be con-

clusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is

"'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976). The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining

whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to give appropriate weight to the opinion of Dr. Emily Johnson, Wolfe's treating physician.
- There is not substantial evidence supporting the administrative law judge's determination that Wolfe has the residual functional capacity for light work.

**Analysis.**

Treating Doctors' Opinions.  Plaintiff argues that the administrative law judge erred in rejecting the opinions of Dr. Emily Johnson that Wolfe was employable at least on a part-time basis.

Treating Doctor: Legal Standard.  A treating doctor's opinion[1] on the issue of

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimus. Wilson*, 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner

disability is entitled to greater weight than that of a physician who has examined plain-tiff on only one occasion or who has merely conducted a paper review of the medi-cal evidence of record. 20 C.F.R. § 404.1527(d)(1). *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2). When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsist-ent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commission-er of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973

---

could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id.*

14

(6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. *Id.* Subject to these guidelines, the Commiss-

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lased or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

ioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Consequently, the decision-maker must have "an understanding of the clinical signs and laboratory findings and what they signify."  *Id.*  When the treating source's opinion "is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight . . . ."  The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion.  When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we will give the source's [opinion] more weight than we would give it if it were from a non-treating source."  20 C.F.R. §404.1527(d)(2)(i).

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions.  Social Security Ruling 96-2p.  It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable

clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator.

Even when the treating source's opinion is not controlling, it may carry sufficient

weight to be adopted by the Commissioner:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and labora-tory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weigh-ed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

The case law is consistent with the principals set out in Social Security Ruling 96-

2p.  A broad conclusory statement of a treating physician that his patient is disabled is

17

not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). Even when the Commissioner determines not to give a treartor's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2). *Wilson,* 378 F.3d at 544; *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007); *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Treating Doctor: Discussion. Plaintiff argues that since Wolfe's blood sugars have not been controlled, it is reasonable to consider that he would have had difficulty work-

18

ing full time. However, no treating source, including Dr. Johnson, has expressed the opinion that Wolfe cannot perform sustained, substantial gainful work.

There is conflicting evidence in the record. Although Wolfe's testimony, if fully credited, would demonstrate that he is unable to work, the clinical findings and test results support the administrative law judge's residual functional capacity findings. Dr. Johnson's notes indicate that Wolfe has not been compliant with diet and medications. (Tr. 295, 317, 342-345, and 377.) When he has been, his symptoms related to diabetes have been minimal. Eye examinations do not support Wolfe's testimony that blurred vision interferes with his ability to work. He has no retinopathy, and Dr. Echert's most recent diagnoses are myopia and astigmatism. (Tr. 354.) Although Wolfe has complained of pain and swelling in his knees, findings on physical examination have been minimal (Tr. 360), and an x-ray of the left knee was normal. (Tr. 379.) Since the administrative law judge's residual functional capacity is supported by substantial evidence of record, he did not err in his consideration of Dr. Johnson's opinion on the ultimate issue of disability.

Residual functional capacity. Plaintiff argues that there is not substantial evidence supporting the administrative law judge's residual functional capacity finding that Wolfe could perform work having light exertional demands. Plaintiff maintains that his blurred vision, fatigue, shakiness, weakness, dizziness and head pain–all associated with his high blood sugars–are inconsistent with light work. For the reasons set out above, the Court determines that there is substantial evidence supporting the admin-

19

istrative law judge's residual functional capacity findings.

From a review of the record as a whole, the Court concludes that there is sub-
stantial evidence supporting the administrative law judge's decision denying benefits.
Accordingly, the decision of the Commissioner of Social Security is **AFFIRMED.** The
Clerk of Court is **DIRECTED** to enter **JUDGMENT** for defendant.


 s/Mark R.  Abel          
United States Magistrate Judge